UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAVIN K. S.,[1]<br><br>             Plaintiff,<br><br>     v.<br><br>ANDREW M. SAUL, Commissioner of Social Security,<br><br>             Defendant. | Case No. ED CV 18-02676-RAO<br><br>**MEMORANDUM OPINION AND ORDER** |

## I.    **INTRODUCTION**

Plaintiff Navin K. S. ("Plaintiff") challenges the Commissioner's denial of his application for a period of disability and disability insurance benefits ("DIB"). For the reasons stated below, the decision of the Commissioner is AFFIRMED.

## II.    **PROCEEDINGS BELOW**

On October 7, 2015, Plaintiff filed a Title II application for DIB alleging disability beginning March 24, 2015. (Administrative Record ("AR") 56-57.) His application was denied on November 6, 2015. (AR 76.) Plaintiff filed a written

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

request for hearing, and a hearing was held on February 8, 2018. (AR 29, 87.) Represented by counsel, Plaintiff appeared and testified, along with an impartial vocational expert. (AR 33-49.) On March 21, 2018, the Administrative Law Judge ("ALJ") found that Plaintiff had not been under a disability, pursuant to the Social Security Act,[2] from March 24, 2015 through June 30, 2016. (AR 24.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (AR 1.) Plaintiff filed this action on December 28, 2018. (Dkt. No. 1.)

The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act. *See Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 24, 2015, the alleged onset date ("AOD"), through June 30, 2016, the date last insured ("DLI"). (AR 17.) At **step two**, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine status post fracture at the C7 level; chronic headaches and dizziness post motor vehicle accident with concussion in March 2015; and hearing loss in right ear requiring hearing aid. (*Id*.) At **step three**, the ALJ found that Plaintiff "did not have an impairment or combination of impairments that met or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (AR 19.)

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to:

> [P]erform sedentary work as defined in 20 CFR 404.1567(a) except he is restricted from climbing ladders, ropes or scaffolds but remains capable of occasionally climbing ramps and stairs. He is also able to frequently balance, stoop, kneel, crouch and crawl. However, he

---

[2] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

> requires the use of a cane for all ambulation over 100 feet. He is precluded from working around hazards such as machinery and unprotected heights. Lastly, due to his hearing loss, he is capable of working in a moderate voice environment.

(*Id.*)

At **step four**, the ALJ found that Plaintiff was unable to perform any past relevant work. (AR 22.) At **step five**, the ALJ concluded that Plaintiff is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (AR 24.) Accordingly, the ALJ determined that Plaintiff had not been under a disability from the AOD through the DLI. (*Id.*)

### III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. A court must affirm an ALJ's findings of fact if they are supported by substantial evidence and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotation marks omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v.*

*Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see Robbins*, 466 F.3d at 882 ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

## IV. DISCUSSION

Plaintiff raises two issues for review: (1) whether the ALJ properly considered the relevant medical evidence of record in assessing Plaintiff's RFC; and (2) whether the ALJ has properly considered Plaintiff's subjective testimony in assessing the RFC. (*See* Joint Submission ("JS") 4.) For the reasons below, the Court affirms.

### A. The ALJ Properly Evaluated Plaintiff's Subjective Complaints[3]

Plaintiff argues that the ALJ failed to provide legally sufficient reasons for rejecting his subjective testimony. (*See* JS 11-13.) The Commissioner contends that the ALJ properly evaluated Plaintiff's testimony. (*See* JS 13-18.)

#### 1. Plaintiff's Testimony

Plaintiff testified that he completed high school plus two years of college where he studied automobile engineering. (AR 36.) His most recent work is from 2014 and includes taking care of a family member and self-employment work on cars. (AR 38, 39.)

Plaintiff lives in his own one-story home, with his wife and three children, mother, father, and brother. (AR 36-37.) Plaintiff has his brother or son drive him places. (AR 37.) Most of the time Plaintiff's brother will drive him to doctor's appointments but if his brother cannot take him, Plaintiff takes his son out of school to drive Plaintiff to doctor's appointments. (AR 37.)

---

[3] Because subjective symptom testimony is one factor that the ALJ must consider when assessing a claimant's RFC, the Court addresses the issue of credibility first before discussing the overall RFC determination.

In March 2015, Plaintiff was hit by a car while exiting his vehicle. (AR 40.) Plaintiff testified that upon impact with the car, he was thrown twenty-seven feet away. (*Id.*) Plaintiff was in a coma. (*Id.*) Plaintiff was treated at Riverside County Regional and released home after Plaintiff "fought with the doctor to release [him] home" instead of being released to rehabilitation. (*Id.*)

Plaintiff testified that he is always in pain. (AR 42.) He sometimes has good days, but most days the pain causes him to lay down two or three times a day. (*Id.*) Plaintiff has four or more bad days in a week. (AR 47.) On a bad day, Plaintiff states that he has to stay in bed, and he is not able to go to the store. (*Id.*)

Plaintiff also experiences dizziness, headaches, problems with memory, and inability to focus. (AR 42, 44.) Plaintiff asserts that the back and head pain, headaches, and dizziness he feels has been the same since the date of the accident. (AR 42-43.) Plaintiff has not had any other accidents or injuries. (AR 43.) He receives injections for his back pain. (AR 41-42.) The injections are effective for about three or four days. (AR 43.) He also testified that doctors have been giving him different medications for his mental state of mind. (AR 44.)

According to Plaintiff, he complained to his doctor that something was wrong with his head and asked that the doctor order a magnetic resonance imaging scan ("MRI"). (AR 45.) Plaintiff states that the neurosurgeon said Plaintiff has a brain injury and that the nerves in his ear are destroyed. (*Id.*) Plaintiff suffers from loss of hearing in his right ear. (AR 44.)

### 2. Applicable Legal Standards

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citing *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Treichler v.*

5

*Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036) (internal quotation marks omitted). If so, and if the ALJ does not find evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting a claimant's testimony regarding the severity of his symptoms. *Id*. The ALJ must identify what testimony was found not credible and explain what evidence undermines that testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). "General findings are insufficient." *Lester*, 81 F.3d at 834.

### 3. Discussion

"After careful consideration of the evidence," the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 21.) The ALJ relied on the following reasons: (1) Plaintiff's course of treatment, including conservative treatment; and (2) lack of objective medical evidence to support the alleged severity of symptoms. (*See* AR 22-24.) No malingering allegation was made, and therefore, the ALJ's reasons must be "clear and convincing."

#### a. Reason No. 1: Plaintiff's Course of Treatment

An ALJ may discount a claimant's testimony based on routine and conservative treatment. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."); *see also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting a plaintiff's complaint "that she experienced pain approaching the highest level imaginable" as "inconsistent with the 'minimal, conservative treatment' that she received").

Here, the ALJ observed that Plaintiff received "sporadic treatment with management of his symptoms with medication." (AR 22.) When Plaintiff was

admitted to the hospital after the accident, Plaintiff did not require surgery and was given medication along with instructions to follow up with physical therapy, a general surgeon, and a neurologist. (AR 20, 227-30.)

In September 2015, when Plaintiff complained of back and shoulder pain, he was prescribed Tylenol. (AR 20, 235.) This prescription was refilled routinely. (*See* AR 233, 235, 264, 265.) On June 28, 2016, two days before the DLI, Plaintiff was prescribed Norco. (AR 296-97.) In August 2016, Plaintiff reported that Norco was "too strong" and requested "T3" instead. (AR 393-94.) Plaintiff sought medical treatment in January 2017 for pain to the right side of his body, and again asked for Tylenol. (AR 401-402.) However, in February Plaintiff sought to obtain a prescription for Norco, and his physician declined. (AR 403-404.) "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility" for benefits. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Furthermore, as to Plaintiff's back pain, the ALJ afforded "great deference" to Plaintiff's claim that he requires the use of a cane. (AR 22.) However, there was no evidence that Plaintiff was ever prescribed a cane. Because Plaintiff's treatment consisted of a conservative treatment plan consisting of medication, the ALJ permissibly discounted Plaintiff's credibility with respect to his back pain.

Regarding headaches, Plaintiff consulted with a neurologist in May 2016 and reported that he has had headaches since the date of the accident. (AR 283.) The ALJ noted that Plaintiff had not complained of severe headaches until May 2016. (AR 20; *see* AR 233 (reporting pain only in right shoulder in October 2015), 235 (reporting pain only in right shoulder and back in September 2015), 264-68 (reporting pain in right shoulder and head hurting in December 2015 with doctor prescribing Tylenol).) Between 2017 and 2018, after the DLI, Plaintiff sought medical treatment for headaches and was routinely prescribed medication. (AR 307-11, 313-18.) On each of the occasions, Plaintiff was reminded to follow up with a neurosurgeon, but

it is unclear if Plaintiff followed up. (AR 307-11, 313-18.) Instead Plaintiff reported some improvement. (AR 315, 318.) When a claimant complains of disabling pain but does not seek treatment, the ALJ may determine that the claimant's complaint is unjustified or exaggerated. *Orn*, 495 F.3d at 638. Because Plaintiff did not seek treatment for his severe headaches until more than a year after the alleged onset date, the ALJ permissibly discounted Plaintiff's credibility with respect to this described symptom.

Plaintiff testified that the dizziness, along with the headaches and backpain, forces him to have to lay down. (AR 42.) In October 2015, Plaintiff went on to report feeling light headed and dizzy. (AR 20, 255-56.) Plaintiff's doctor directed Plaintiff to obtain an audiogram after which he was informed that he had hearing loss which could be corrected with surgery, but Plaintiff opted for a hearing aid instead. (AR 275-77.) It is permissible for the ALJ to infer that Plaintiff's decision not to seek an aggressive treatment program suggests that Plaintiff's account of his symptom is not as all-disabling as described. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

The Court finds that this reason is a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's subjective testimony.

### b. Reason No. 2: Lack of Supporting Objective Medical Evidence

The ALJ found that the symptoms described by Plaintiff "are not entirely consistent with the medical evidence . . . in the record." (AR 21.) The lack of supporting objective medical evidence cannot form the sole basis for discounting testimony, but it is a factor that the ALJ may consider in making a credibility determination. *Burch*, 400 F.3d at 681; *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)).

Regarding body pain, Plaintiff sought medical attention in September 2015 noting shoulder and back pain. (AR 235.) Subsequently, Plaintiff complained of

only shoulder pain in October 2015. (AR 233.) The ALJ noted that on both occasions no significant physical findings were made, and Plaintiff was prescribed Tylenol and another medication. (AR 233, 235.) In August 2016, an MRI was taken of Plaintiff's cervical spine after he reported back and neck pain. (AR 20-21, 393-94.) The MRI showed "no focal bone marrow edema or loss of vertebral body height" and "no evidence of cord edema," but did show "mild degenerative disc disease" as well as "mild degenerative endplate changes in the cervical spine with small osteophyte formation and small posterior bone spurring." (AR 409.) The ALJ noted that there was "no evidence of nerve root encroachment, impingement or compromise." (AR 21.) Plaintiff did not complain of body pain again until January 20, 2017. (AR 21, 401-02.) Additionally, the ALJ noted, and afforded great deference to, Plaintiff's use of a cane to alleviate his back pain, although the medical evidence demonstrated a "normal gait" as well as "grossly normal tone and muscle strength in all 4 extremities." (AR 20-21, 255-56, 308, 310, 314.)

Regarding headaches and dizziness, a September 2015 consultation found Plaintiff had a normal gait and resulted in a negative Romberg test suggesting normal balance. (AR 255-56.) An audiogram was ordered. (*Id.*) The audiogram showed that Plaintiff suffered from hearing loss. (AR 270.) In December, Plaintiff reported that he did not have dizziness. (AR 277.) Plaintiff's doctor diagnosed Plaintiff with ossicular chain disruption and informed Plaintiff it could be corrected with surgery. (AR 276.) Plaintiff declined surgery and opted for a hearing aid. (*Id.*) Plaintiff testified that he never received the hearing aid. (AR 46.) In May and August 2016, Plaintiff complained of headaches and dizziness, but the medical examinations did not note any significant physical or neurological findings. (AR 283.) Similarly, Plaintiff's neurologist did not note any significant physical or neurological findings in March 2017 when Plaintiff complained of daily dizziness and headaches. (AR 307-08.) Plaintiff's neurologist ordered an MRI. (*Id.*)

///

Plaintiff underwent an MRI scan in October 2017. (AR 21, 311.) The MRI showed a "moderate lateral and third ventriculomegaly suggesting underlying noncommunicating hydrocephalus." (*Id.*) The ALJ noted that while the MRI showed a significant disorder, there was no evidence to suggest that the disorder occurred prior to the DLI. (AR 21.) The MRI and subsequent diagnosis did not occur until more than sixteen months after the DLI. (AR 21, 311.) "In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset date of a disabling impairment occurred sometime prior to the date of the first recorded medical examination." *Armstrong v. Comm'r of Soc. Sec. Admin*, 160 F.3d 587, 589-90 (9th Cir. 1998). Here, the medical evidence does not allow for a reasonable inference to be made that the disorder occurred prior to the DLI. Specifically, the ALJ noted that Plaintiff's "record showed consistently unremarkable neurological findings" and his symptoms were managed with medication. (AR 21; *see* AR 255-56, 276-77, 283-84.) Furthermore, absent a finding by the ALJ that Plaintiff "was disabled at some point after the date last insured," the ALJ need not make a determination as to the onset date of disability. *Sam v. Astrue*, 550 F.3d 808, 809 (9th Cir. 3008)

The ALJ thoroughly considered Plaintiff's medical records and found that they did not support Plaintiff's allegations of disabling symptoms and limitations. *See Reddick*, 157 F.3d at 725. The ALJ was permitted to rely on the normal examination results and lack of significant medical findings in assessing the credibility of Plaintiff's testimony. *See Garza v. Astrue*, 380 F. App'x 672, 674 (9th Cir. 2010) (finding that an ALJ properly considered a claimant's normal exam findings when noting a lack of objective medical evidence to support the claimant's allegations).

The Court finds that this is a clear and convincing reason, supported by substantial evidence, for discounting Plaintiff's credibility.

///

///

### 4. Conclusion

The Court finds that each of the ALJ's reasons for discounting Plaintiff's credibility, is a clear and convincing reason, supported by substantial evidence, for discounting Plaintiff's credibility. As such, the ALJ properly evaluated Plaintiff's subjective complaints.

### B. The ALJ Properly Considered the Relevant Medical Evidence in Assessing Plaintiff's RFC

Plaintiff contends that the ALJ failed to properly consider the relevant medical evidence in assessing Plaintiff's RFC. (*See* JS 4-6.) The Commissioner contends that the ALJ properly considered all of the evidence. (*See* JS 7-11.)

Plaintiff contends that the ALJ's RFC determination "is not supported by or consistent with any medical evidence or medical opinions of record." (JS 4-5.) However, it is unclear what Plaintiff's argument is here. Plaintiff fails to cite to any case law or statutory authorities in support of his assertions. Instead, Plaintiff simply recounts his medical history without providing any correlation to the RFC determination.

The Court reviews "only issues which are argued specifically and distinctly." *Greenwood v. F.A.A.*, 28 F.3d 971, 977 (9th Cir. 1994); *see United States v. Graf*, 610 F.3d 1148, 1166 (9th Cir. 2010) ("Arguments made in passing and not supported by citations to the record or to case authority are generally deemed waived"); *Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1036 (C.D. Cal. 2018) ("The Court's role is not to make or develop arguments on behalf of the parties, and . . . failure to present cogent arguments is enough to deny these objections"). While Plaintiff must make his own arguments for reversal, the Court has a duty to undergo a "full review of the facts" and make "an independent determination as to whether the [ALJ's] findings are supported by substantial evidence." *Stone v. Heckler*, 761 F.2d 530, 532 (9th Cir. 1985.). Thus, the Court reviews whether the ALJ properly considered the relevant medical evidence in assessing Plaintiff's RFC.

In determining Plaintiff's RFC, the ALJ took "into account the objective findings but also generously consider[ed] the claimant's subjective complaints," in accordance with social security regulations. (AR 22.) The ALJ considered but "did not give great weight to the determinations of the State agency physical medical consultants." (*Id.*)

The ALJ is responsible for assessing a claimant's RFC "based on all of the relevant medical and other evidence." 20 CFR § 404.1545(a)(3), 404.1546(c); *see Robbin*s, 466 F.3d at 883 (citing Soc. Sec. Ruling 96-8p (July 2, 1996), 1996 WL 374184, at *5). In doing so, the ALJ may consider any statements provided by medical sources, including statements that are not based on formal medical examinations. *See* 20 CFR § 404.1513(a), 404.1545(a)(3). An ALJ's determination of a claimant's RFC must be affirmed "if the ALJ applied the proper legal standard and his decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *accord Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

### 1. Opinion Evidence

Plaintiff suggests, without arguing, that the ALJ erred in rejecting the opinions of the state agency consultants and by failing to order an examination by a consultative examiner or medical expert at the hearing. (*See* JS 5.)

#### a. Legal Standards

Courts give varying degrees of deference to medical opinions based on the provider: (1) treating physicians who examine and treat; (2) examining physicians who examine, but do not treat; and (3) non-examining physicians who do not examine or treat. *Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). Most often, the opinion of a treating physician is given greater weight than the opinion of a non-treating physician, and the opinion of an examining physician is given greater weight than the opinion of a non-examining physician. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

The ALJ must provide "clear and convincing" reasons to reject the ultimate conclusions of a treating or examining physician. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Lester*, 81 F.3d at 830-31. When a treating or examining physician's opinion is contradicted by another opinion, the ALJ may reject it only by providing specific and legitimate reasons supported by substantial evidence in the record. *Orn*, 495 F.3d at 633; *Lester*, 81 F.3d at 830; *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (citation omitted).

### b. State Agency Consultants

State agency consultant D. Subin, M.D. reviewed Plaintiff's application (*see* AR 56-64) and S. Lee, M.D. reviewed the application upon reconsideration (*see* AR 66-74). Dr. Subin found that Plaintiff could perform light work but found that Plaintiff must avoid concentrated exposure to hazards. (AR 63-64.) Dr. Lee agreed. (AR 72-73.) The ALJ did "not give great weight to the determinations of the State agency . . . consultants." (AR 22.) The ALJ reasoned that the state agency consultants "did not have the benefit of considering the additional evidence that was available only after the reconsideration determination." (*Id.*)

While both state agency consultants determined that Plaintiff could perform light work, they did not have an opportunity to review records after February 10, 2016. (*See* AR 56-64, 66-74.) However, the ALJ properly reviewed the entire record and found that Plaintiff could perform "sedentary work . . . except he is restricted from climbing ladders, ropes, and scaffolds." (AR 19.) As state agency consultants, Drs. Subin and Lee are non-treating physicians. *See Ramirez v. Shalala*, 8 F.3d 1449, 1454 n.8 (9th Cir. 1993) (finding plaintiff's physician's assessment should be awarded more weight than the assessment by non-treating physician state agency doctors). As such the ALJ may properly afford less weight to their opinions.

13

Additionally, the ALJ found that Drs. Subin and Lee "did not adequately consider [Plaintiff's] subjective complaints." (AR 22.) Further, the ALJ's review of the entire record yielded an assessment of sedentary work, which is more restrictive than the light work assessment that the state agency consultants rendered. *See* 20 CFR § 404.1567.

In sum, while the ALJ afforded the opinions of the Drs. Subin and Lee less weight, the ALJ did not reject their opinions as Plaintiff suggests. (*See* JS 5.) The Court finds that the ALJ did not err in affording less weight to the opinions of state agency consultants Drs. Subin and Lee.

### c. Medical Expert Testimony

On February 8, 2018, a hearing was held before the ALJ. (AR 30-55.) At the hearing, the ALJ heard testimony from Plaintiff and a vocational expert. (*Id.*) There was no testimony from a medical expert. (*See id.*) Plaintiff suggests, but provides no argument, that the lack of a medical expert constitutes error. (*See* JS 5.)

The decision not to call a medical expert is analyzed under the ALJ's duty to develop a record. *See Armstrong*, 160 F.3d at 589-91. "[T]he ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel." *Mayes*, 276 F.3d at 459; *Laura G. v. Berryhill*, 357 F. Supp. 3d 1023, 1029 (C.D. Cal. 2019). However, the burden of producing evidence in support of his disability claim remains with the Plaintiff. *See Mayes*, 276 F.3d at 459. Plaintiff "must . . . submit all evidence known to [Plaintiff] that relates to whether or not [Plaintiff is ] blind or disabled. This duty is ongoing and . . . applies at each level of the administrative review process." 20 CFR § 404.1512(a) (internal citations omitted).

"The ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation." *Mayes*, 276 F.3d at 459. An ALJ has broad discretion to order a consultative examination. *Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001). The Ninth

Circuit has found that ambiguous or inadequate evidence can be found when, *inter alia*, an ALJ expresses that a consultative examination would have been appropriate, *see Reed*, 270 F.3d at 842-44, an ALJ substantially relies on the testimony of a medical expert that expresses the need for more medical evidence to reach a conclusion, *see Tonapetyan v. Halter*, 242 F.3d 1144, 1150-51 (9th Cir. 2001), or where medical inferences need to be made in order to make a determination as to the disability onset date, *see Armstrong*, 160 F.3d at 589-91. However, when the record is neither ambiguous nor inadequate, the ALJ fulfills her duty by "engag[ing] in an in-depth analysis of whether, based on the medical evidence of record," Plaintiff is entitled to the benefit he seeks. *Crane v. Barnhart*, 247 Fed. App'x 574, 578-79 (9th Cir. 2007).

Here, the ALJ engaged in an in-depth review of Plaintiff's medical records in determining Plaintiff's RFC. (*See* AR 15-24.) The ALJ reviewed Plaintiff's medical treatment history as well as the determinations of the state agency consultants. (*Id.*) Plaintiff's medical records consist of Plaintiff's treatment after his March 24, 2015 accident and after Plaintiff's DLI. (*See* AR 227-406.) The medical records document complaints of headaches, dizziness, loss of hearing, body pain, including back, shoulder, and neck pain. (*Id.*) While Plaintiff testified that the combination of these ailments made it so he had to lay down frequently (AR 42, 46), the ALJ properly discounted Plaintiff's credibility due to the lack of objective medical evidence in support of these complaints and the use of conservative care (AR 19-22). When the ALJ evaluated the medical records showing a significant cognitive disorder discovered after the DLI, the ALJ found that Plaintiff failed to establish that the disorder occurred prior to the DLI. (AR 21.) The ALJ made no medical determination as to when the disorder occurred, but instead found that the resulting "symptoms appear well managed with medication and conservative care." (*Id.*)

///

///

Because the medical evidence regarding Plaintiff's impairments is neither ambiguous nor inadequate, the ALJ had no duty to develop the record further by ordering the testimony of a medical expert.

### 2. Objective Medical Evidence

As discussed above in connection with Plaintiff's subjective complaints, the ALJ thoroughly reviewed the medical records presented by Plaintiff. The ALJ's RFC determination was based on a review of the records provided to the state agency consultants, as well as medical records obtained after the state agency consultants' review. (*See* AR 16-22.)

### 3. Conclusion

In sum, the Court finds that the ALJ considered the relevant medical evidence in assessing Plaintiff's RFC.

## V. **CONCLUSION**

IT IS ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: October 9, 2019

ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**